IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02934-KLM

GARY L. HAYNES, for and on behalf of the Insurance Trust of trustee Marjorie Unger,

    Plaintiff,

v.

TRANSAMERICA CORPORATION, a member of Aegon Group, doing business as Transamerica Life Insurance Company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant's **Motion for Summary Judgment** [#64][1] (the "Motion"). Plaintiff filed a Response [#70] in opposition to the Motion, and Defendant filed a Reply [#73]. The Court has reviewed the Motion, the Response, the Reply, the attached exhibits, entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#64] is **GRANTED**.[2]

### I. Summary of the Case

    The details underlying the claims in this case are not relevant to resolution of the present Motion [#64]. In short, however, Plaintiff, as purported trustee of an insurance trust

---

[1] "[#64]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c), the matter has been referred to the undersigned for all purposes. *See* [#37].

(the "Trust") established by Marjorie Ann Unger ("Ms. Unger"), asserts three claims seeking damages from Defendant, the insurer: (1) breach of contract, (2) common law bad faith, and (3) unjust enrichment. *See Am. Compl.* [#33].

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable trier of fact could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable trier of fact could find in his favor. *See Liberty Lobby*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165

F.3d 1321, 1326 (10th Cir. 1999). The nonmoving party must show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed. 1998).

### III. Analysis[3]

---

[3] The Court notes at the outset of the Analysis that Plaintiff, and occasionally Defendant, could have been, and should have been, much more diligent in providing pin cites to the record throughout the briefs. "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C.COLO.LCiv R. 7.1(e). The Court is not required to sort through the documents submitted by the parties to find support for their arguments. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials"). The Court may, and has, considered other materials in the record. *See id.* However, the Court may not and has not done the parties' jobs for them by researching every submitted document to find support for the statements made in the briefs.

**A.     Standing**

Defendant argues that Plaintiff has failed to demonstrate standing to pursue this lawsuit on behalf of the Trust.  *Motion* [#64] at 7-8; *Reply* [#73] at 3-5.  Pursuant to Article III of the United States Constitution, federal courts have jurisdiction to hear only particular cases and controversies.  *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).  "To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision."  *Id.* (internal quotation marks omitted).

"[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance."  *Colo. Outfitters Ass'n*, 823 F.3d 537, 543 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  "[T]he elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'"  *Colo. Outfitters Ass'n*, 823 F.3d 537, 544 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*

As is relevant here, pursuant to Fed. R. Civ. P. 17(b)(3), "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under

Colorado law,[4] a "fiduciary" is defined as "one or more persons designated in a will, trust instrument, or otherwise, whether corporate or natural persons and including successors and substitutes, who are acting in any of the following capacities: . . . (IV) Trustees." Colo. Rev. Stat. § 15–1–802(3)(a). "During the period of administration of the . . . trust and until final distribution, a [trustee] has the power to perform, without court authorization, every act reasonably necessary to administer . . . the trust . . . ." Colo. Rev. Stat. § 15–1–804(1). This includes the power "[t]o pay, contest, or otherwise settle claims by or against the . . . trust, including taxes, assessments, and expenses, by compromise, arbitration, or otherwise . . . ." Colo. Rev. Stat. § 15–1–804(2)(r).

There appears to be no dispute that John Unger ("Mr. Unger) is the only trustee actually named in the Trust agreement. *See Motion* [#64] at 8; *Response* [#70] at 1-2. The dispute here is whether Plaintiff, Gary L. Haynes, despite not being formally named as a trustee on the Trust, may still act on behalf of Trust with respect to litigating the Trust's claims in this lawsuit. *Motion* [#64] at 8. The Court first considers whether Plaintiff has provided evidence demonstrating that he was, in fact, a formal trustee of the Trust. *See Colo. Outfitters Ass'n*, 823 F.3d at 544 (stating that Plaintiff bears the burden of proof on standing).

Plaintiff states, without citation, that "[b]oth the insured Mrs. Unger and her son John Unger gave powers of attorneys allowing Mr. Haynes to act as trustee for the trust." *Response* [#70] at 1; *see also id.* at 2 (stating, without citation, that "Mrs. and Mr. Unger gave a power of attorney for Mr. Haynes to act"). Plaintiff further avers, without citation,

---

[4] The parties do not appear to dispute that Colorado law applies to the underlying dispute.

-5-

that "[t]he powers of attorney were intended to give Mr. Haynes the full authority to manage the trust including working with Defendant." *Id.* at 2. Plaintiff also states: "Attached is the copy of the [sic] notifying the Defendant of the fact that Mr. Unger appointed Mr. Haynes as the acting trustee, attached hereto is Power of Attorney." *Id.* However, Plaintiff does not cite to a specific exhibit containing this Power of Attorney, and the Court has not discovered this document among Plaintiff's exhibits as a result of its own review of the record.[5] Plaintiff later states, again without citation, that "[b]ecause Mr. Unger could not be available he transferred the trustee duties to Mr. Haynes." *Response* [#70] at 6. Plaintiff also states, without citation, that: "It is not a correct statement of fact to state that there was no notice that Mr. Unger wanted to appoint Mr. Haynes." *Id.* at 7. Plaintiff notes, without citation, that "[i]n 2011 attempts were made to change the trustee's name." *Id.* at 8. However, Plaintiff concedes, without citation, that "Defendant would not recognize the change or accept the use of a power of attorney." *Id.*

Based on this recitation, there appears to be utterly no evidence, and certainly no evidence properly brought to the Court's attention, that Plaintiff was ever formally added to the Trust as trustee or otherwise formally empowered to act on behalf of Mr. Unger, who was undisputedly formally named as the trustee of the Trust. Thus, the Court finds that there is no genuine issue of material fact on this issue and that Plaintiff has not met his

---

[5] Plaintiff again later states, without citation, that "[a]ttached is the Power of Attorney that was sent to Defendant showing Mr. Haynes to be the acting trustee." *Response* [#70] at 7 n.1. The footnote is made in connection to a statement about Mr. Unger. *Id.* at 6-7 ("In December there were times that Mr. Haynes to obtain information acted as Mr. Unger."). To the extent Plaintiff may be referring to a Power of Attorney that was actually attached to the Response, *see* [#70-2], that Power of Attorney only purports to empower Mr. Unger and Mr. Haynes to act on Ms. Unger's behalf. There is no mention of the Trust, and there is no evidence or argument that Ms. Unger was a named trustee on the Trust.

burden of demonstrating that he was, in fact, a formal trustee of the Trust. *See Colo. Outfitters Ass'n*, 823 F.3d at 544.

The Court next turns to consideration of whether Plaintiff has provided evidence that he was a de facto trustee of the Trust. Neither party suggests a standard which the Court should use to determine whether Plaintiff was a de facto trustee. No Colorado state court nor federal district court within the Tenth Circuit appears to have enunciated a test for determining whether a person may legally be deemed a de facto trustee, although these courts have offered their tacit approval of de facto trustees in various contexts. *See, e.g.*, *City of Pueblo v. Grand Carniolian Slovenian Catholic Union of the U.S. of Am.*, 358 P.2d 13, 16 (Colo. 1960); *In re Woods*, 215 B.R. 623, 627 (10th Cir. 1998) (citing *In re Holiday Isles, Ltd.*, 29 B.R. 827, 829 (Bankr. S.D. Fla. 1983) (stating that "[c]ourts faced with a trustee's failure to technically qualify have long recognized the concept of a 'de facto' trustee of a bankrupt estate"); *Shackelford v. Lake*, No. CIV-15-0218-HE, 2016 WL 6993960, at *5 (W.D. Okla. Nov. 29, 2016) ("As his mother's attorney-in-fact, as the manager of the LLC, and as de facto trustee of her trust-like device, Mr. Shackleford [sic] clearly owed his mother fiduciary responsibilities." (internal citation and footnotes omitted)); *United States v. Novotny*, No. 99-D-2196, 2001 WL 1673628, at *3 (D. Colo. Nov. 8, 2001) ("Novotny and his wife have served as appointed or de facto trustees during the entire existence of the Trusts."); *Yeast v. Pru*, 292 F. 598, 603 (D.N.M. 1923) ("Therefore these trustees, if not de jure, were unquestionably de facto, trustees of the respective towns they assumed to represent and act for as such trustees.").

In the absence of any relevant guidance from the State of Colorado or the Tenth Circuit federal courts regarding the standard for determining a de facto trustee, the Court

turns to the standards enunciated by these courts for determining de facto status in other contexts, i.e., corporate and governmental actors. These standards are materially similar. In the corporate context, "[a] de facto officer is defined as one who, under color of authority, exercises a corporate office." *Kuehn v. Kuehn*, 642 P.2d 524, 526 (Colo. App. 1981). "The underlying policy for the doctrine of de facto officers is the protection of the interests of the public and individuals dealing with such 'officers.'" *Id.* In *Kuehn v. Kuehn*, 642 P.2d at 526, the Colorado Court of Appeals held that "[b]y clothing [the defendant] with the indicia of a corporate officer through the power of attorney, the assignment, and the quitclaim deed, [the plaintiff] gave [the defendant] de facto officer status."

In *People v. Sherrod*, 204 P.3d 466, 471-72 (Colo. 2009), the Colorado Supreme Court thoroughly explained the de facto doctrine in the context of public employment:

> The situation now before us, where an irregularity exists in an otherwise qualified county judge's authority to act as a district judge, is analogous to cases of de facto officers. "The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995); *see also McDowell v. United States*, 159 U.S. 596, 601-02, 16 S.Ct. 111, 40 L.Ed. 271 (1895) ("[T]he rule is well settled that where there is an office to be filled, and one, acting under color of authority, fills the office and discharges its duties, his actions are those of an officer de facto, and binding upon the public."). According to the United States Supreme Court,
>
>> The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.
>
> *Ryder*, 515 U.S. at 180, 115 S.Ct. 2031.
>
> This doctrine has a long history in Colorado as well. In 1885, this court

decided *Darrow v. People*, 8 Colo. 417, 8 P. 661 (1885). Darrow had been elected, by the majority of votes, to the office of alderman in the City of Denver. *Id.* at 418, 8 P. at 662. His official authority was later challenged, however, when it was revealed that he had not met a requirement of holding the office because he failed to pay taxes in Denver during the year prior to the election. *Id.* Instead of nullifying all of his actions since the election, this court decided that "the better doctrine is that if such a one [is otherwise qualified] and proceeds with the performance of the duties existing in connection therewith until the disability is adjudged by a proper tribunal, he is a de facto officer, and his acts performed in the discharge of his official duties are valid and binding." *Id.* at 424, 8 P. at 666.

Similar to the de facto officer doctrine, we hold that where constitutional or statutory authorization exists to allow a judge—county, retired, or resigned—to perform certain judicial duties upon appointment and the judge is otherwise qualified under the constitutional or statutory authorization, actions taken by the judge under the color of authority are valid even if irregularities in the record later reveal a minor defect in the appointment.

The common thread connecting these cases is that an individual may only obtain de facto status when a person takes action under color of authority, whether that authority is granted by the corporation or the government. Other courts outside of this jurisdiction have adopted this standard in connection with de facto trustees. For example, the Seventh Circuit Court of Appeals has enunciated the standard as follows: "Two elements are essential before these trustees can be deemed de facto trustees: 1. The office or position must be assumed under color of right or title. 2. Those claiming de facto status must exercise the duties of the office." *In re Bankers Trust*, 403 F.2d 16, 20 (7th Cir. 1968). The Seventh Circuit explained the first element by stating: "Color of right or title merely means 'authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.'" *Id.*

More recently, the Washington Court of Appeals adopted this same standard:

Although no Washington court has recognized the authority of a de facto trustee in a trust proceeding, the Oregon Court of Appeals recently adopted

-9-

> the de facto trustee concept in a similar setting. In that case, a person believing herself to be trustee appointed a successor trustee, but the trial court later invalidated the appointing trustee's status as trustee, thereby removing her authority to appoint a successor. The appellate court adopted the rule from *In re Bankers Trust*, 403 F.2d 16, 20 (7th Cir. 1968), that a person is a de facto trustee where the person (1) assumed the office of trustee under a color of right or title and (2) exercised the duties of the office. A person assumes the position of trustee under color of right or title where the person asserts "an authority that was derived from an election or appointment, no matter how irregular the election or appointment might be." A de facto trustee's good faith actions are binding on third persons. Because the purported successor trustee . . . acted as trustee and assumed its office through an appointment it reasonably believed to be effective, it was a de facto trustee and was entitled to compensation for its services. Other jurisdictions have also used the de facto trustee concept. *See, e.g.*, *Creel v. Martin*, 454 So.2d 1350 (Ala. 1984); *In re Estate of Dakin*, 58 Misc.2d 736, 296 N.Y.S.2d 742 (1968); *In re Trust of Daniel*, 466 P.2d 647 (Okla. 1970). . . . Because the concept of a de facto trustee is consistent with Washington law, we adopt it here.
>
> [Here, the appointed trustee] assumed the office of trustee under color of right when the dissolution court appointed it trustee. And [the appointed trustee] acted as the trustee, marshalling [sic] and protecting the Trust's assets. [The appointed trustee] reasonably believed it was the trustee and acted in good faith. The irregularity in the dissolution court's appointment did not invalidate [the appointed trustee's] de facto trustee status.

*In re Irrevocable Trust of McKean*, 183 P.3d 317, 321-22 (Wash. App. 2008) (internal footnotes and some internal citations omitted).

This persuasive authority, when read in conjunction with Colorado law regarding de facto status, convinces the Court that the concept of a de facto trustee is consistent with Colorado law and that the test enunciated by the Seventh Circuit for recognition of de facto trustees is consistent with Colorado legal authority on de facto status in other contexts. As mentioned above, two elements must be met before a purported trustee can be deemed a de facto trustee: (1) the office or position must be assumed under color of right or title, and (2) the one claiming de facto status must exercise the duties of the office. *See In re*

*Bankers Trust*, 403 F.2d at 20. The Court, therefore, assumes without deciding that the concept of a de facto trustee is viable under Colorado law.

However, Plaintiff does not meet the standard for a de facto trustee enunciated above. The parties do not dispute the second element, and the record is replete with evidence that Plaintiff exercised the duties of trustee of the Trust since its inception in 1985. *See, e.g.*, *Def.'s Ex. B, Depo. of Pl.* [#64-2] at 33 (stating that Plaintiff believed he became trustee when it was formed because all invoices for the Trust came to him through Mr. Unger in their post office box, because he managed the payments and all aspects of the Trust, and because he was unaware of any actions ever taken by Mr. Unger as trustee of the Trust).

Plaintiff's argument fails on the first element, though, because Plaintiff has not provided evidence that he assumed the position of trustee under color of right or title. This is not a situation like the ones found in *Sherrod*, *Bankers Trust*, or *In re Irrevocable Trust of McKean*, where, in short, a procedural technicality stripped the purported trustee of the status of legal trustee. Although it is clear from the record that Plaintiff executed the duties of trustee since the Trust's inception, there has been no evidentiary demonstration that Plaintiff was given the right, or was intended to be given the right, to exercise those duties on behalf of the Trust or on behalf of Mr. Unger as the Trust's legal trustee. As the Seventh Circuit emphasized: "Color of right or title merely means 'authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.'" *In re Bankers Trust*, 403 F.2d at 20. However well-meaning Plaintiff's intentions regarding his execution of the duties of a trustee on behalf of the Trust, the Court cannot find on this record that Plaintiff has presented evidence that he was more than "a

mere volunteer." Thus, the Court finds that there is no genuine issue of material fact on this issue and that Plaintiff has not met his burden of demonstrating that he was a de facto trustee of the Trust. *See Colo. Outfitters Ass'n*, 823 F.3d at 544.

In the absence of evidence demonstrating that Plaintiff is either a formal trustee of the Trust or a de facto trustee of the Trust,[6] the Court holds that Plaintiff does not have standing under Colorado law to pursue claims in this Court on behalf of the Trust. Colo. Rev. Stat. § 15–1–804(1), (2)(r).

"[S]ummary judgment is not the correct disposition for . . . claims invalidated based on . . . lack of standing." *In re Flanders*, 657 F. App'x 808, 822 (10th Cir. 2016). This type of defect precludes subject-matter jurisdiction. *Id.* (citing *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015)). For this kind of jurisdictional defect, "summary judgment is ordinarily improper." *In re Flanders*, 657 F. App'x at 822 (citing *Shikles v. Sprint/United Mgt. Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005)). Instead, when the Court finds that it lacks subject-matter jurisdiction, even when adjudicating a motion for summary judgment, the claims must be dismissed without prejudice. *In re Flanders*, 657 F. App'x at 822 (citing *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("[A] dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect.")). Accordingly, Plaintiff's claims in this matter are **dismissed without prejudice** on the basis of lack of subject-matter jurisdiction. *See also Brereton v. Bountiful*

---

[6] The Court notes that at various points in the evidence submitted by Plaintiff, the issue of whether he was a successor trustee to Mr. Unger emerges. *See, e.g.*, *Aff. of Pl.* [#70-1] at 2. However, Plaintiff does not raise this issue in his brief and, regardless, appears not to have provided sufficient evidence on this point for adjudication; the Court therefore declines to address it.

*City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B.    Fed. R. Civ. P. 17(a)(3)**

Plaintiff argues that, if the Court finds he does not have standing, that he should be permitted to substitute Mr. Unger in his place, pursuant to Fed. R. Civ. P. 17(a)(3), which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it has been originally commenced by the real party in interest.

Defendant opposes this request.[7]  *Reply* [#73] at 4-5.

In *Esposito v. United States*, 368 F.3d 1271, 1275-77 (10th Cir. 2004), the Tenth Circuit Court of Appeals addressed when a request asserted under Rule 17(a)(3) should be granted:

> Read literally, Rule 17(a) would appear to require that a party always be given a reasonable time to substitute the real party in interest where objection has been made.  Such a literal reading, however, would countenance conduct in violation of the spirit of the Rules, such as filing suit in the name of a fictitious party in the hope that the real party might at some future point be identified.  Courts have therefore looked to the Advisory Committee Notes accompanying the Rule to provide parameters for its application.

---

[7]  Defendant partially opposed this request on the ground that Plaintiff should have made it as a separate motion and not as part of his Response [#70].  *Reply* [#73] at 4-5.  Although Defendant is correct, *see* D.C.COLO.LCivR 7.1(d), the Court addresses Plaintiff's request at this time for the convenience of all parties and the efficient resolution of this matter.

-13-

The Advisory Committee Notes to the 1966 Amendment of Rule 17 specify that substitution is required only where necessary to prevent a forfeiture or injustice:

> This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases. The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an *understandable mistake* has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. . . . It is, in cases of this sort, intended to insure against forfeiture and injustice . . . .

Fed. R. Civ. P. 17 advisory committee's note (1966 Amendment) (emphasis added).

The district court relied on the language we have emphasized in the above quotation to conclude that the party seeking substitution must demonstrate an "understandable" mistake in naming the incorrect party plaintiff. Some courts have indeed adopted this formulation of the requirement. In this circuit, however, we have never required a plaintiff seeking substitution to show that his mistake was "understandable" in addition to being "honest." Instead, our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was "honest"), and on whether the defendant was prejudiced thereby. Interestingly, [prior case law] suggests that even a mistake that should have been patently obvious does not automatically foreclose a later substitution, so long as the plaintiff did not act in bad faith and the defendant has not been prejudiced thereby.

A careful reading of the Rule 17(a) commentary cautions us against an over-emphasis on the "understandability" of counsel's mistake as a separate factor in the analysis. The example given in the commentary of what is not an "understandable" mistake—the deliberate naming of fictitious parties—is also plainly not an "honest" mistake. It is therefore open to question whether the commentary intended to ingraft a separate "understandability" requirement, in addition to the "honest mistake" requirement, where the plaintiff committed an otherwise honest mistake.

-14-

> . . . Since the language of the Rule itself does not impose a threshold requirement that a party's mistake be "understandable," we should be wary of reading such a blanket requirement into the Rule based on ambiguous language in the commentary.
>
> We do not foreclose the possibility that a party's mistake in naming the plaintiff . . . could be so inexplicable and irrational as to raise an inference that it was not an "honest" mistake. That inference cannot be drawn in this case, however, because the district court has already made a finding, supported by the evidence, that the mistake made was an "honest" one. That finding triggered the policy behind Rule 17(a), which disfavors forfeiture. We therefore conclude that the district court abused its discretion in denying the requested substitution based on the plaintiff's failure to show an "understandable" mistake.

(internal footnotes and some internal citations omitted).

As previously noted, the uncontested evidence is that Plaintiff has performed all work in connection with the Trust since its inception in 1985. *See, e.g.*, *Def.'s Ex. B, Depo. of Pl.* [#64-2] at 33 (stating that Plaintiff believed he became trustee when it was formed because all invoices for the Trust came to him through Mr. Unger in their post office box, because he managed the payments and all aspects of the Trust, and because he was unaware of any actions ever taken by Mr. Unger as trustee of the Trust). There is no indication before the Court that Plaintiff's mistake in believing he could bring suit was not based on an honest belief that he could do so based on his many years of service as acting trustee, even if, in reality, as the Court has found, he actually has no standing as a formal or de facto trustee to bring this suit.

However, the Court makes no finding at this point in time regarding this issue. Rather, the Court finds that granting Plaintiff's request under Rule 17(a)(3) is premature. First, Plaintiff's counsel does not purport to represent Mr. Unger. *See The 198 Trust Agreement, Dated Dec. 15, 2010 v. CAAMS, LLC*, No. 14-cv-01264-RM-KMT, 2015 WL

1529274, at *6 (D. Colo. Mar. 30, 2015). Second, "it would be inequitable for the Court to join a non-party to this matter as a plaintiff when the Court does not know if [Mr. Unger] seeks to vindicate any alleged rights." *Id.* Further, to the extent Plaintiff states he would "move to join Mr. Unger as a party to this proceeding," Reply [#70] at 14, the request is improper because Fed. R. Civ. P. 20(a)(1) requires that the non-party, i.e., Mr. Unger, move for joinder to the action, and not Plaintiff. Mr. Unger has not so moved.

Accordingly, the Court **denies without prejudice** Plaintiff's request under Fed. R. Civ. P. 17(a)(3). *See, e.g.*, *The 198 Trust Agreement*, 2015 WL 1529274, at *6-7.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#64] is **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiff's claims are **DISMISSED without prejudice** on the basis of Plaintiff's lack of standing.[8]

IT IS FURTHER **ORDERED** that Plaintiff's request to "join" Mr. Unger under Fed. R. Civ. P. 17(a)(3) is **DENIED without prejudice**.

IT IS FURTHER **ORDERED** that the Court's ruling on the Motion [#64] is held in abeyance for **thirty days** from the day of this Order to allow Mr. Unger to properly move "to ratify, join, or be substituted" into this action. *See* Fed. R. Civ. P. 17(a)(3). If no motion is made by that time, the Court will close this case.[9]

---

[8] The Court emphasizes that it takes no position on the underlying merits of the claims asserted in this case.

[9] If this case is closed at that time, nothing in this Order is intended to preclude Mr. Unger, as the alleged proper trustee of the Trust, from filing a similar action in the future, if appropriate. Careful note should be made of any applicable statutes of limitations, including, if applicable, the

-16-

IT IS FURTHER **ORDERED** that the joint Final Pretrial Conference, Jury Instructions Conference, and Trial Preparation Conference set for January 31, 2018, at 1:30 p.m. is **VACATED**.

IT IS FURTHER **ORDERED** that the three-day Jury Trial set to begin on March 5, 2018, at 9:00 a.m. is **VACATED**.

Dated: January 18, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

Colorado Savings Clause, Colo. Rev. Stat. § 13–80–111.