IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02934-KLM

GARY L. HAYNES, for and on behalf of the Insurance Trust of trustee Marjorie Unger,

  Plaintiff,

v.

TRANSAMERICA CORPORATION, a member of Aegon Group, doing business as Transamerica Life Insurance Company,

  Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Exclude Expert Witness** [#60][1] (the "Motion"). Plaintiff filed a Response [#67][2] in opposition to the Motion, and Defendant filed a Reply [#69]. The Court has reviewed the Motion [#60], the Response [#67], the Reply [#69], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#60] is **GRANTED**.

**I. Summary of the Case**

This case arises out of an insurance dispute. Since the 1980s, Plaintiff has paid the bills and taken care of the day-to-day business of an insurance trust which owns the

---

[1] [#60] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

[2] The Court notes that the Response [#67] was exceptionally poorly edited. *See* D.C.COLO.LCivR 7.1(e),(i) (stating that every citation "shall include" pincites, and that "ungrammatical [ ] or unintelligible" motions "may be grounds for sanctions").

contested life insurance policy. *Compl.* [#5] at 2. Plaintiff sued Defendant for cancelling the life insurance policy, which had allegedly lapsed due to insufficient payment. *Notice of Removal* [#1] at 1-2; *Motion* [#60] at 1. Plaintiff requested that Defendant reinstate the policy, filed this lawsuit, and then received notice that Defendant denied Plaintiff's reinstatement application, assertedly "consistent with the terms of the policy." *Motion* [#60] at 1.

Defendant alleges that the policy was cancelled because Plaintiff did not pay the appropriate premium payments required to repay an approximately twenty-year loan taken out against the policy. *Id.* at 3-4. Defendant states that "consistent with the terms of the policy," Defendant began sending Plaintiff notices "as the gross/cash value of the policy minus the increasing loan balance became less than the monthly deduction due, and therefore, additional premium was required to prevent the policy from lapsing." *Id.* at 4. Defendant continued to send these notices from 2009 through October 2015, at which point Defendant stated that Plaintiff must pay $20,499.14 before November 8, 2015, to prevent the policy from lapsing. *Id.* at 4-5. Plaintiff paid $5,000.00 and the policy lapsed. *Id.* at 5.

Plaintiff has designated Bradley Levin ("Levin") as an expert witness. *Motion* [#60] at 6; *Exhibit A* [#60-11]. Mr. Levin states that his "present opinions [subject to his review of subsequent materials] are that [Defendant] acted unreasonably and contrary to applicable standards in determining that coverage under the Unger Policy had lapsed and then refusing to reinstate the policy, and that, by its conduct, [Defendant] vitiated its duties of good faith and fair dealing . . . ." *Def.'s Ex. A* [#60-11] at 2. He states that he reviewed various documents, including, but not limited to, documents produced for litigation, the powers of attorney, the insurance agreement, and communications between Plaintiff and

Defendant. *Id.* at 1. Mr. Levin does not state that he reviewed documents that were not specific to this litigation, such as recent bad faith insurance cases or other documents which may outline industry standards.

Defendant seeks to exclude Mr. Levin's testimony on the basis that it is unreliable: "[w]hile [Mr. Levin] summarily concludes that [Defendant] acted in bad faith, a review of his report establishes that he fails to set forth any reliable reasoning or methodology to support [his] opinion as required under Fed. R. Evid. 702." *Motion* [#60] at 2.

## II. Standard of Review

"Admission at trial of expert testimony is governed by Fed. R. Evid. 702, which imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides the foundational requirements for admission of expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court's discretion in admitting or excluding expert testimony under *Daubert* is broad, "both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate

determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003).

"[B]efore admitting expert testimony, the trial court must make certain findings to fulfill its gatekeeper role under Rule 702." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011). In deciding whether an expert opinion is admissible, the district court conducts a two-step analysis: (1) the court must determine whether the expert is qualified to give the proffered opinion, and (2) the Court must examine whether the opinion is reliable. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

Rule 702 sets out three specific requirements to establish reliability: (1) a showing that the "testimony is based upon sufficient facts or data," (2) a showing that "the testimony is the product of reliable principles and methods," and (3) a showing that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). *See Yeley-Davis*, 632 F.3d at 684. This step of the analysis "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge*, 328 F.3d at 1221.

"The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence." *Zykronix Inc. v. Conexant Systems, Inc.*, No. 16-cv-00163-KLM, 2018 WL 1417701, at *5 n.2 (D. Colo. March 22, 2018). The proponent is not required to prove that the opinion is indisputably correct or even that the expert's theory is generally accepted in the scientific community. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology was reliable, that sufficient facts and data as required by the methodology

were used and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222. The burden on the proponent of the expert testimony is significant, as any inadequacy in the proof regarding any of Rule 702's elements may render the entire opinion inadmissible. *See Mitchell*, 165 F.3d at 782.

"Ultimately, the rejection of expert testimony is the exception rather than the rule. [T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (internal citations omitted).

### III. Analysis

Defendant argues that the testimony should be excluded because Mr. Levin failed "to set forth any reliable reasoning or methodology to support [his] opinion as required under Fed. R. Evid. 702." *Motion* [#60] at 2. Defendant argues that Mr. Levin's opinions "lack reliability" because "his report fails to set forth any reasoning or methodology to support that opinion." *Id.* at 9. Specifically, Defendant argues that "Mr. Levin concludes that [Defendant] 'altered' the premium payment required in its last grace period notice and [that notice] was inconsistent with prior notices. However, he does not explain how the payment was 'altered' or how the amount was inconsistent with the terms of the policy." *Id.* at 9-10. Defendant asserts that Mr. Levin's admission that he did not understand how Defendant calculated the "altered" premium payment is indicative of not applying reliable methodology. *Id.* at 10. Finally, Defendant argues that Mr. Levin's "report fails to reference

any applicable industry standard" and that he ignores relevant facts to determine the premium amount. *Id.* Defendant concludes that Mr. Levin's opinions "are based upon his mere assertions, not an applied methodology to the facts . . . [and] his conclusions are only based on his purported authority as an expert witness." *Id.*

Plaintiff argues that "Mr. Levin demonstrates the proper requisites of experience and knowledge that allows [sic] him to voice his opinion as and [sic] expert." *Response* [#67] at 2. Plaintiff also argues that because Mr. Levin has "testified as an expert on insurance bad faith for a number of years and has been accepted as an expert on this subject in dozen [sic] of cases," his opinion should be presented to a jury. *Id.* at 2-3. Plaintiff asserts that "Defendant cannot be heard to suggest that Mr. Levin's opinions must be excluded because they fail to identify a specific industry standard for each opinion . . . . Good faith in Colorado can occur when an industry standard itself is being followed . . .". *Id.* at 10-11. Plaintiff then discusses the Unfair Claims Practices Act and applicable standards of care. *Id.* Plaintiff states, without citation, that "Mr. Levin does identify the specific parts of the of the [sic] Defendant's conduct that constitutes [sic] bad faith." *Id.* at 10.

Defendant does not argue that Mr. Levin is not qualified to offer an expert opinion, and therefore the Court restricts its analysis to determining whether Mr. Levin's opinion is demonstrably reliable. To support a finding of reliability sufficient to withstand a motion under Rule 702, Plaintiff must show that (1) the expert's "testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

The Court finds that Plaintiff fails to meet the second prong of the test because

Plaintiff has not sufficiently shown that Mr. Levin's testimony is the product of reliable principles and methods. Fed. R. Evid. 702(c). Although Mr. Levin states that Defendant acted "contrary to applicable standards in determining that coverage under the Unger Policy had lapsed . . . ," he does not identify or explain the "applicable standards" or how he analyzed the facts of the case in light of those standards. *See Ex. K* [#60-11] at 2. The problem here is similar to that identified in another bad faith insurance case in which Mr. Levin was offered as an expert witness:

> He does not identify whether this is his understanding of a standard imposed by law, whether it is a statement of current prevailing practice in the insurance industry, a statement of his belief as to the best practices that the insurance industry should follow, or merely his own personal opinion as to what should have been done in this case. If [the expert] were articulating a standard imposed by law or one that is customarily observed in the insurance industry, such evidence might be sufficient to demonstrate that [the insurance company's] failure to follow such a practice was unreasonable. But if [the expert] is merely stating an aspirational standard that is not actually in use in the insurance industry, or is merely offering a personal view as to what he would have liked to have seen [the insurance company] do, such opinions are insufficient to carry [the plaintiff's] burden of showing that [the insurance company's] conduct was unreasonable.

*Williams v. Auto-Owners Ins. Co.*, No. 12-cv-00999-MSK-CBS, 2014 WL 12537030, at *5 (D. Colo. Mar. 25, 2014). In his report, Mr. Levin has neither identified nor explained his methodology with an appropriate level of specificity, and he has not explained how he analyzed the facts in light of generally accepted standards.[3] *See generally Ex. K* [#60-11]; *Ex. L* [#60-12]. Although he states that "[e]ach of [his] opinions is based upon [his] background, knowledge, and experience, and [his] resulting familiarity with insurance

---

[3] The Court also notes that the excerpt of Mr. Levin's deposition, *see* [#20-12], and his affidavit, *see* [#67-1], also fail to sufficiently allay the Court's concern regarding articulation of the legal basis for Mr. Levin's opinions.

industry requirements and standards," he simply does not explain what those requirements and standards are. *Ex. K* [#60-11] at 4. In other words, statements that Defendant violated duties of good faith and fair dealing and that delays were unnecessary and unreasonable are simply insufficient in the absence of explaining applicable "insurance industry requirements and standards," such that a jury can use its independent judgment to discern the correctness of his opinion. *See United States v. Richter*, 796 F.3d 1173, 1195-96 (10th Cir. 2015) ("[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment.").

In *O'Sullivan v. Geico Casualty Company*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017), a bad faith insurance case, the Court partially permitted and partially denied a request to exclude an expert's opinion. The Court found that some of the expert's opinions were reliable because they were sufficiently supported by facts, and those facts were appropriately analyzed in the context of industry standards. 233 F. Supp. 3d at 922-27. The proffered expert not only reviewed documents relevant to the case, but he also reviewed "court opinions from other insurance litigation," and provided "a narrative discussion of his views of the operation of the insurance industry, including sections on 'General Principles of Insurance,' 'Role of Insurance Companies,' the 'Nature of Uninsured Motorist Coverage,' and 'Claims Handling Standards.'" *Id.* at 922. He further provided general information about the insurance industry in Colorado, providing standards against which his opinions could be compared. *Id.* The Court found that the expert's opinions which were substantiated by this background information were admissible, but the Court excluded conclusory, prejudicial, and/or speculative opinions which were untethered from

industry standards.  *Id.* at 927-930.  Specifically, the Court rejected his opinions which usurped the authority of the finder of fact.  For example, the Court noted that while an expert may explain what the industry standard is and whether he believes the insurance company deviated from that standard, he may not say that the insurance company's conduct was unreasonable since that determination is the domain of the trier of fact.  *Id.* at 929.  Additionally, the expert may identify and explain the statute in the context of how insurance companies generally practice, but the expert may not say that the insurance company violated a statute.  *Id.*

In *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1185-88 (D. Colo. 2018), the Court recently addressed the opinions of an expert witness regarding a bad faith insurance claim.  The Court noted that it is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *TBL Collectibles, Inc.*, 285 F. Supp. 3d at 1185 (quoting *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, (10th Cir. 2016)).  The defendant's expert witness had stated "that businesses are legally obligated to maintain records of purchased items," but his report "contain[ed] no reference to legal authorities supporting this conclusion."  *TBL Collectibles, Inc.*, 285 F. Supp. 3d at 1185.  The Court noted that while the expert witness "may be correct, defendant bears the burden of establishing the admissibility of an expert's opinion and [the expert's] opinion is mere *ipse dixit*."  *Id.* at 1185-86.  Thus, the Court found that the expert's "opinions regarding businesses' record-keeping obligations lack a sufficient basis to satisfy the requirements of Fed. R. Evid. 702."  *Id.* at 1186.

Mr. Levin did not provide any background regarding industry standards in his written report or the portion of his deposition the parties provided to the Court.  *Ex. K* [#60-11]; *Ex.*

*L* [#60-12]. He states that he reviewed the documents prepared with respect to this specific litigation and insurance policy, but failed to explain how those documents, *in light of industry standards*, informed his opinion. *See generally*, *Ex. K* [#60-11]; *Ex. L* [#60-12]. Additionally, Mr. Levin provides conclusory and prejudicial comments that usurp the authority of the fact finder, such as his assessment that "[Defendant] acted wrongfully and in derogation of its solemn duties towards [sic] its insured by summarily, without forewarning or explanation, altering the payment amount . . . and then by failing to recognize the deficiencies in its actions . . . . By its actions, [Defendant] violated its duties of good faith and fair dealing . . . ." *Ex. K* [#60-11] at 4. Accordingly, the Court finds that the opinions in Plaintiff's proffered expert report fails to meet the second element of the reliability test. Fed. R. Evid. 702(c).

To be clear, the Court makes no comment on the ultimate *correctness* of Mr. Levin's opinions, but merely finds that Mr. Levin has failed to sufficiently articulate the basis for his opinions. Accordingly, because Mr. Levin has not sufficiently demonstrated the reliability of his expert opinion, the Court **grants** the Motion [#60].

### IV. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#60] is **GRANTED**.

Dated: September 13, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge